1  Christian M. Knox (SB no. 171780)
   Christian@rudermanknox.com
2  Brian D. McFarlin (SB No. 259099)
   Brian@rudermanknox.com
3  Ruderman & Knox, LLP
   1300 National Drive, Suite 120
4  Sacramento, CA 95834
   Telephone: (916) 563-0100
5  Facsimile: (916) 563-0114

6  Attorneys for Petitioner, L.P., by
   and through his Guardian ad litem,
7  D.P.

8

9

10                          **UNITED STATES DISTRICT COURT**

11                        **NORTHERN DISTRICT OF CALIFORNIA**

12

13  L.P., by and through his guardian ad       CASE No.: _____
    litem, D.P.,
14                                              **PETITION FOR WRIT OF**
                 Plaintiff,                     **PROHIBITION OR, IN THE**
15                                              **ALTERNATIVE, WRIT OF**
    vs.                                         **MANDAMUS**
16
    STATE OF CALIFORNIA, OFFICE
17  OF ADMINISTRATIVE HEARINGS,

18               Respondent.

19  K12, INC., SILICON VALLEY FLEX
    ACADEMY, SANTA CLARA
20  COUNTY OFFICE OF EDUCATION,
    EL DORADO COUNTY CHARTER
21  SELPA, and CALIFORNIA
    DEPARTMENT OF EDUCATION,
22
               Real Parties in Interest.
23

24

25

26

27

28

# Table of Contents

TABLE OF AUTHORITIES ................................................................................... III

I.      INTRODUCTION ................................................................................... 2

II.     JURISDICTION AND VENUE .............................................................. 2

III.    PETITION .............................................................................................. 3

IV.     ORDER AND OPINION BELOW ......................................................... 3

V.      STATEMENT OF FACTS ..................................................................... 3

VI.     PROCEDURAL BACKGROUND ........................................................ 5

VII.    ISSUES PRESENTED ........................................................................... 8

VIII.   RELIEF SOUGHT ................................................................................. 8

IX.     LEGAL ARGUMENT ........................................................................... 9

        A.    Petitioner's Writ is Proper Because He Has Exhausted His
              Administrative Remedies ............................................................ 9

        B.    In the Alternative, Exhaustion of Administrative Remedies Is Not
              Required When Important, Novel or Recurrent Issues that Would
              Escape Review are Presented or if the Case Can Be Reduced to a
              Question of Law .......................................................................... 10

        C.    The OAH Erred when it Dismissed Parties Over Claims that Can
              Only be Resolved be Developing a Factual Record at Hearing ......... 10

        D.    The Dismissed Parties Should be Held Responsible for the
              Alleged Denial of Petitioner's FAPE ........................................ 12

              1.    Since the State of California Holds Ultimate Responsibility
                    for Public Education, it Must be Held Liable for
                    Petitioner's Special Education  Services After a Public
                    Charter School Closure ...................................................... 12

              2.    K12, Inc. Should be Held Responsible Since it Acted as a
                    Public Agency and Maintained Control of Decisions
                    Regarding Petitioner's Education at Flex .............................. 14

              3.    SCCOE Should be Held Responsible Since it Granted the
                    Charter to Flex and Responsibility Potentially Reverted to
                    SCCOE when Flex Closed .................................................. 15

              4.    The Charter SELPA Should be Held Responsible as a
                    Public Agency Potentially Accountable for Provision of
                    Petitioner's Special Education .............................................. 16

        E.    Public Policy Requires that a Party be Available to Provide a
              Remedy when a Public School Closes ........................................ 16

1

X.      CONCLUSION ............................................................................................17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Table of Authorities**

2

**Federal Statutes**

3

20 U.S.C. § 1400 et seq. .................................................................... 2, 3, 4

4

20 U.S.C. § 1412(a)(11)(A) ............................................................ 13

5

20 U.S.C. § 1413(g) ....................................................................... 2, 13

6

20 U.S.C. § 1415 ............................................................................... 5

7

20 U.S.C. § 1415(b)(6) ................................................................... 10

8

20 U.S.C. § 1415(i)(3) ..................................................................... 3

9

28 U.S.C. § 1651 ........................................................................... 3, 9

10

**California Statutes**

11

Calif. Educ. Code § 56028.5 .......................................................... 11

12

Calif. Educ. Code § 56500 ............................................................. 11

13

Calif. Educ. Code § 56500.1 .......................................................... 16

14

Calif. Educ. Code § 56501(a) ................................................... 10, 11

15

Calif. Educ. Code § 56505 .............................................................. 3

16

California Government Code §11523 ............................................... 9

17

**California Regulations**

18

34 C.F.R. § 300.149 ....................................................................... 13

19

34 C.F.R. § 300.2 ........................................................................... 16

20

**Federal Case Law**

21

*Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1022 (E.D. Cal. 2016) ......................... 11

22

*Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953) ......................................... 9

23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955) ..................................... 11

24

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001) ............................ 17

25

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627–628 (1991) ...................... 15

26

*Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir. 1997) ......................................... 13

27

*Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 94 (1982) ......................... 15

28

*Orange County Dept. Of Educ. v. California Dept. of Educ.*, 668 F. 3d 1052, 1063-1064, (9th Cir. 2011) .................................................................................. 13

*R.V. v. Rivera, 220 F. Supp. 3d 588, 593,* (E.D. Pa. 2016) ........................................ 13

*St. Tammany Parish Sch. Bd. v. Louisiana*,142 F.3d 776, 784, (5th Cir. 1998) ....... 13

*West v. Atkins*, 487 U.S. 42, 56 (1988) ..................................................................... 15

*Wyner v. Manhattan Beach Unified Sch. Dist.*,223 F.3d 1026, 1028-1029 (9th Cir. 2000) ........................................................................................................................ 11

**California Case Law**

*Butt v. State of California,* 4 Cal.4th 668, 680-681 (1992) ................................. 14, 19

*Economic Empowerment Foundation v. Quackenbush*, 57 Cal.App. 4th 667 (1997) ................................................................................................................................. 10

*Hall v. City of Taft*, (1956) 47 Cal.2d 177, 302 P.2d 574 ......................................... 14

*Ogo Associates v. City of Torrance*, 37 Cal.App.3d 830 (1974) .............................. 10

*Piper v. Big Pine School Dist.*, 193 Cal. 664 (1924) ................................................. 14

*Redevelopment Agency v. Superior Court*, 228 Cal.App.3d 1487 (1991) ............... 10

*San Francisco Unified School Dist. v. Johnson*, (1971) 3 Cal.3d 938, 952; 92 Cal.Rptr. 309; 479 P.2d 669 ..................................................................................... 14

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ................................................................... 11

*Luchini v. Commissioner of Revenue*,764 N.E.2d 870 (2002); 436 Mass. 403 ........ 10

*Student v. Folsom Cordova Unified School District*, OAH Case No. 2009090847 (2009) ....................................................................................................................... 11

*Student v. Pennsylvania Department of Education*,116 LRP 3021 (2015) ............... 14

*Student v. Shandon Joint Unified School Dist.*, OAH Case No. 2012020281 (2012) ................................................................................................................................. 11

## I.   INTRODUCTION

This case involves a question that is fundamental to a child's right to an education and one that is, unfortunately, becoming more common:  What party or parties are ultimately responsible under the Individuals with Disabilities Education Act of 2004 (20 U.S.C. § 1400 et seq.) ("IDEA") for the denial of free appropriate public education ("FAPE") to a student upon the closure of a public charter school?

In the case at hand, Petitioner was attending a public charter school that closed and the school itself lacks assets to provide any remedy to Petitioner for a denial of FAPE under the IDEA.  In his administrative due process complaint, Petitioner brought in various other parties, including the California Department of Education (the state education agency); K12, Inc. (the corporation that operated and managed the school); Santa Clara County Office of Education (the public entity that provided the school with its charter); and the El Dorado County Charter Special Education Local Plan Area (a public entity charged with providing special education services for the school).

However, the State of California, Office of Administrative Hearings ("OAH") granted motions to dismiss all of these parties with the exception of Silicon Valley Flex Academy, the closed public charter school.  This action left Petitioner without a remedy and without the ability to develop a factual record at hearing regarding the role of these parties in Petitioner's education.  Petitioner seeks an order from this Court reversing the orders dismissing the real parties in interest and for a hearing before the Office of Administrative Hearings to fully resolve these issues and to provide Petitioner with a potential remedy for his alleged denial of FAPE.  (*See*, e.g., 20 U.S.C. § 1413(g).)

## II.   JURISDICTION AND VENUE

The United States District Court, Northern District of California has jurisdiction over this case because it involves the statutory interpretation of 20

U.S.C. section 1400 et seq.  Further, jurisdiction over this proceeding has been vested by both federal and California law. (20 U.S.C. § 1415(i)(3); Calif. Educ. Code § 56505).

The Northern District of California is the proper venue for these proceedings because it is the venue in which the Petitioner is located.  Respondent is a governmental entity with offices within the boundaries of the Northern District and conducts hearings within Santa Clara County.  Therefore, the United States District Court, Northern District of California has jurisdiction over the subject matter and is the proper venue for the matter to be heard.

## III.   PETITION

Pursuant to Title 28 of the United States Code, Section 1651, Petitioner L.P., a minor, by and through his guardian ad litem, Parent, (hereinafter "Student" or "Petitioner") applies for a writ of prohibition or, in the alternative, a writ of mandamus directed to the United States District Court for the Northern District of California, and in support of this application, Petitioner states:

## IV.   ORDER AND OPINION BELOW

On May 17, 2018, the OAH issued an order granting K12, Inc.'s ("K12") Motion for Reconsideration and dismissing K12 as a party.  On June 5, 2018, the OAH granted the motion to dismiss filed the El Dorado County Charter Special Education Local Plan Area ("Charter SELPA").  On June 5, 2018, the OAH granted the California Department of Education's ("CDE") motion to dismiss.  On June 11, 2018, the OAH granted the Santa Clara Office of Education's ("SCCOE") motion to dismiss.

## V.   STATEMENT OF FACTS

1    Petitioner is a child with special needs and is entitled to a free appropriate

2   public education (FAPE) as set forth by the Individuals with Disabilities Education

3   Act 2004 ("IDEA").  (20 U.S.C. section 1400 et seq.).  Petitioner is seventeen years

4   old and was in sixth grade in the 2017-2018 school year.  Petitioner is eligible for

5   special education under the qualifying condition of autism and speech or language

6   impairment.  Petitioner has deficits in social skills, social/emotional functioning,

7   coping skills, written expression, executive functioning, math, reading fluency,

8   reading decoding, reading comprehension, fine motor skills, sensory processing,

9   gross motor skills, expressive language, and receptive language. He has been

10   diagnosed with autism, auditory processing disorder, depression, and anxiety.

11    During the 2015-2016 school year, Petitioner was attending Silicon Valley

12   Flex Academy ("Flex"), a public charter school operated by K12 pursuant to a

13   charter issued by the SCCOE.  By the terms of SCCOE's charter which it granted to

14   SVFA, SCCOE asserted that it would supervise and oversee the operations of SVFA

15   and, in fact, that it would charge a fee for doing so.  SCCOE also maintained the

16   right to revoke the charter if SVFA failed to meet the terms of the charter.  The

17   Charter SELPA was monitoring and providing technical support to Flex.  In

18   addition, since Flex was a public school, the CDE bears ultimate responsibility for

19   ensuring students receive a FAPE at Flex.

20    Petitioner continued to attend Flex until July of 2016, when Petitioner's

21   family was informed that Flex was closed because of the termination of its contract

22   with K12.

23    On January 24, 2018, Petitioner filed a Due Process Complaint with the Office

24   of Administrative Hearings ("OAH") against Gilroy Unified School District,

25   Morgan Hill Unified School District, and K12.  (Exhibit A.)  On May 16, 2018,

26   Petitioner filed an amended Complaint adding Flex, SCCOE, CDE, and Charter

27   SELPA as parties, once it was discovered that it was unclear what agency or

28   agencies assumed the responsibility for Flex's legal liabilities in the aftermath of its

closing.  (Exhibit B.)  Petitioner alleges that each of these parties were responsible, under the IDEA, for the provision of a FAPE to Petitioner while he was attending Flex and once it closed.

Petitioner sought a due process hearing as set forth in 20 U.S.C. section 1415 to address these issues.

## VI.    PROCEDURAL BACKGROUND

On March 7, 2018, K12 filed a Motion to Dismiss or, in the alternative, to bifurcate the hearing to first decide K12's status as a party.  (Exhibit C.)   K12 claimed that it did not operate Flex and that Flex's Board was autonomous and independent of K12.  (*Id*.)

On March 12, 2018, Petitioner filed an opposition to the Motion to Dismiss, providing evidence that Flex's Board was not independent and was run by a K12 employee, that K12's financial reports reveal that it managed and operated Flex, that Flex's Principal was a K12 employee, and that Flex's website listed on the California Department of Education's Directory redirected to K12's website. (Exhibit D.)  Petitioner did not oppose K12's Motion to Bifurcate.  (*Id*.)  On March 13, 2018, K12 filed a reply.  (Exhibit E.)

On March 13, 2018, the OAH denied K12's motion to dismiss, finding that Petitioner and K12 "raise disputed factual issues that must be determined by an administrative law judge after hearing testimony and reviewing the documentary evidence.  K12's motion is not limited to matters that are facially outside OAH jurisdiction, but instead seeks a ruling on the merits."  (Exhibit F.)  The OAH deferred on the issue of bifurcation until the pre-hearing conference.  (*Id*.)

On May 15, 2018, K12 filed a Motion for Reconsideration, claiming that the charter documents show that Flex operated as its own local education agency ("LEA") and that K12 was not responsible for the provision of a free appropriate public education ("FAPE") under the IDEA.  (Exhibit G.)   On May 17, 2018, the OAH issued an order granting K12's Motion for Reconsideration and dismissing

K12 as a party, even though Petitioner had informed OAH in a May 16, 2018 pre-hearing conference statement that he was planning on filing an opposition.  (Exhibit H.)

On May 17, 2018, Petitioner filed a Motion for Reconsideration of the OAH's order and an opposition to K12's Motion for Reconsideration, stating that Petitioner lacked sufficient opportunity to oppose K12's Motion for Reconsideration, that K12 lacked new facts, circumstances or law; and that there was evidence that K12 had a responsibility to provide Petitioner with a FAPE under the IDEA.  (Exhibit I.)  On May 18, 2018, the OAH denied Petitioner's Motion for Reconsideration, finding that K12 was a private for-profit corporation and a vendor, not a public agency, based on K12's assertion without any evidence other its own declarations.  (Exhibit J.)

On May 21, 2018, Charter SELPA filed a motion to dismiss, claiming that it was not responsible for providing Petitioner with a FAPE and was not involved in decisions involving Petitioner's education.  (Exhibit K.)   The Charter SELPA relied on the declaration of its Director, Ginese Quann, for evidence of these claims.  (*Id*.) The Charter SELPA argued that the California Department of Education ("CDE") should be responsible for an alleged denied of FAPE by a closed charter school. (*Id*.)

On June 4, 2018, Petitioner filed an opposition to the Charter SELPA's motion to dismiss, alleging that a hearing was necessary to determine whether the Charter SELA was a public agency responsible for providing a FAPE to Petitioner. (Exhibit L.)

On June 4, 2018, the California Department of Education also filed an opposition to the Charter SELPA's motion to dismiss, claiming that the CDE is not a proper party and that the Charter SELPA was a proper party since "[f]actual questions remain as to the relative responsibilities of the SELPA and the Academy in relation to the student's FAPE" and the OAH had previously ruled in another case

that a hearing was required to determine the relationship between the Charter SELPA and Flex.  (Exhibit M.)

On June 5, 2018, the OAH granted the Charter SELPA's motion to dismiss, finding that there were insufficient facts to claim that it was a proper party.  (Exhibit N.)

On May 22, 2018, CDE filed a motion to dismiss, arguing that it is not responsible for providing a FAPE to a student, even if the charter school in question is closed.  (Exhibit O.)

On May 24, 2018, Petitioner filed an opposition to CDE's motion to dismiss, demonstrating that CDE is responsible when a LEA is unable or unwilling to maintain programs in compliance with the IDEA and, regardless, that an evidentiary hearing was required to determine which agency is responsible for the alleged denial of FAPE.  (Exhibit P.)

On June 5, 2018, the OAH granted CDE's motion to dismiss.  (Exhibit Q.)

On June 5, 2018, SCCOE filed a motion to dismiss, claiming that it did not make decisions involving Petitioner's education and did not provide special education or related services to Petitioner, citing to claims made in a declaration by David Wong, SCCOE's Administrator of the Charter Schools Department.  (Exhibit R.)

On June 7, 2018, Petitioner filed an opposition to SCCOE's motion to dismiss, demonstrating that SCCOE was a proper party since the known facts indicated that SCCOE maintained control over the operations of Flex, held the power to revoke the charter completely if proper services were not provided to students, and that responsibility reverted to SCCOE when Flex closed.  (Exhibit S.)

On June 11, 2018, the OAH granted SCCOE's motion to dismiss, finding insufficient facts that SCCOE was involved in decisions relating to Petitioner. (Exhibit T.)

On July 2, 2018, Petitioner filed a Motion to Amend Complaint to bring more specific allegations against Flex itself and to reflect the change in circumstances following the dismissal of the various parties. (Exhibit U.) In this Motion, Petitioner's counsel provided information received from Flex's counsel indicating that Flex was in dissolution. (*Id.*)

Currently, the pre-hearing conference in this matter is set for July 9, 2018 and the hearing is set to begin on July 17, 2018. Since Petitioner settled with Gilroy Unified School District and Morgan Hill Unified School District, Flex is the only remaining respondent in this case. However, Flex has been closed for two years and is in dissolution, effectively leaving Petitioner with no remedy as to the alleged denial of FAPE while he attended Flex.

## VII.   ISSUES PRESENTED

1.   Did the OAH err when it dismissed CDE, SCCOE, K12 and Charter SELPA without permitting an evidentiary hearing?

2.   What party or parties are ultimately responsible under the IDEA for denials of FAPE to a student upon the closure of a public charter school?

3.   Did the OAH's dismissals of CDE, SCCOE, K12 and Charter SELPA violate public policy by effectively denying Petitioner a remedy for alleged failures to provide Petitioner a FAPE since Flex closed and can no longer provide a remedy?

## VIII.  RELIEF SOUGHT

1.   Petitioner seeks a writ from this Court prohibiting OAH from dismissing CDE, SCCOE, K12 and Charter SELPA.

2.   Petitioner seeks a writ from this Court mandating that OAH immediately reinstate hearing dates.

3.    Petitioner seeks a writ from this Court mandating that OAH permit that the issue of whether CDE, SCCOE, K12 and Charter SELPA are proper parties be heard at a due process hearing.

## IX.    LEGAL ARGUMENT

### A.    Petitioner's Writ is Proper Because He Has Exhausted His Administrative Remedies

Title 28 of the United States Code, Section 1651 (the All Writs Act) gives authority of this court to issue all writs which are "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ sought by Petitioner is necessary to determine whether the Office of Administrative Hearings may dismiss a party to an IDEA claim when there are material questions of fact concerning the responsibility of the agencies to the student.  The All Writs Act includes writs which are necessary for interim relief as a result of an administrative agency's abuse of power.  (*Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953).)

In this case, as is explained in more detail below, OAH abused its power when it dismissed all viable parties responsible for Petitioner's education while at Flex without permitting a hearing on the issues of fact presented as to the role of these parties in the case.  The OAH orders infringed on Petitioner's ability to obtain testimony and other evidence at hearing, which is especially important since the administrative process with OAH does not permit discovery and the evidence is almost exclusively within the control of these parties.  Petitioner is not required to seek reconsideration from OAH prior to filing a petition for a writ, though he did do so as to K12, as discussed above.  (California Government Code §11523.) Therefore, Petitioner has fulfilled all of the requirements that he exhaust his administrative remedies, and this writ is properly before the Court.

**B.**    **In the Alternative, Exhaustion of Administrative Remedies Is Not Required When Important, Novel or Recurrent Issues that Would Escape Review are Presented or if the Case Can Be Reduced to a Question of Law**

Should the Court determine that Petitioner has not exhausted his administrative remedies, Petitioner contends that exhaustion of administrative remedies is not required because the issues presented in this case are extremely important, are occurring in many other cases before OAH, involve a question of law, and may escape review if not heard in this forum.  (c.f. *Redevelopment Agency v. Superior Court*, 228 Cal.App.3d 1487 (1991); *Luchini v. Commissioner of Revenue*,764 N.E.2d 870 (2002); 436 Mass. 403; *Ogo Associates v. City of Torrance*, 37 Cal.App.3d 830 (1974); *Economic Empowerment Foundation v. Quackenbush*, 57 Cal.App. 4th 667 (1997).)

This writ addresses an issue that is recurring in special education and which is an extremely important issue which may otherwise escape review.  When public charter schools close, students are potentially left without any remedy for denials of FAPE, as was the case here.  If this issue is not addressed by this Court, students of closed public charter schools will continue to face the possibility that they will have no viable entity available to seek redress.  Based upon the foregoing, further exhaustion of administrative remedies is not required in order for Petitioner to proceed on this writ.

**C.**    **The OAH Erred when it Dismissed Parties Over Claims that Can Only be Resolved be Developing a Factual Record at Hearing**

Parents have the right to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." (20 U.S.C. § 1415(b)(6); Ed. Code, § 56501, subd. (a).) OAH has jurisdiction to hear due process

1  claims arising under the Individuals with Disabilities Education Act (IDEA). (*Wyner*

2  *v. Manhattan Beach Unified Sch. Dist.*,223 F.3d 1026, 1028-1029 (9th Cir. 2000).)

3       Special education due process hearing procedures extend to the parent or

4  guardian, to the student in certain circumstances, and to "the public agency involved

5  in any decisions regarding a pupil." (Ed. Code, § 56501, subd. (a).) A "public

6  agency" is defined as "a school district, county office of education, special education

7  local plan area, . . . or any other public agency . . . providing special education or

8  related services to individuals with exceptional needs." (Ed. Code, §§ 56500 and

9  56028.5.)

10       Although OAH will grant motions to dismiss allegations that are facially

11  outside of OAH jurisdiction, special education law does not provide for a summary

12  judgment procedure.  (See, e.g., *Student v. Shandon Joint Unified School Dist.*, OAH

13  Case No. 2012020281 (2012), attached as Exhibit V.)  "OAH will generally not

14  dismiss properly pleaded claims that can only be resolved by developing a factual

15  record at hearing."  (*Student v. Folsom Cordova Unified School District*, OAH Case

16  No. 2009090847 (2009) attached as Exhibit W.)

17       Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

18  "short and plain statement of the claim showing that the pleader is entitled to relief."

19  To survive a motion to dismiss, a complaint must contain sufficient factual matter,

20  accepted as true, to "state a claim to relief that is plausible on its face."  (*Bell*

21  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955).)  A claim has facial

22  plausibility when the plaintiff pleads factual content that allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged.  (*Id.* at

24  556.)  Matters extraneous to the pleading, such as evidence in declarations, should

25  generally not be considered in the context of a motion to dismiss and should be

26  limited to the allegations made within the four corners of the complaint.  (See, e.g.,

27  *Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1022 (E.D. Cal. 2016).)  When

28  determining CDE's, SCCOE's, K12's and Charter SELPA's motions to dismiss, the

OAH reviewed and, in fact, relied upon, evidence well outside the four corners of the complaint, including declarations from employees of these parties, charter documents, and memoranda of understanding.  (Exhibits C, G, H, K, N, O, Q, R, T.) These parties claimed that this evidence tended to show that these parties took no part in decisions involving Petitioner's education.  (*Id*.)  Petitioner responded by providing evidence that these parties were in fact responsible for the management, operation, and otherwise responsible for providing FAPE to student for the time he was enrolled at Flex.  (Exhibits D, I, L, P, S.)  In other words, there were disputes of fact as to the exact nature of the involvement of these entities in Petitioner's special education services and whether they should be held responsible for the alleged denial of FAPE at Flex.

However, despite this factual dispute, the OAH, without an evidentiary hearing, determined that the allegations made in the various respondents' outside evidence were true, discounted Petitioner's evidence, and decided to dismiss these parties based on an erroneous factual determination.  Meanwhile, Petitioner had no opportunity to question any of the witnesses who provided the entities' declarations. Nor did Petitioner have the opportunity to perform discovery to ensure that all relevant documents on the issue had been produced by these entities, since discovery is not permitted in this forum.

**D.      The Dismissed Parties Should be Held Responsible for the Alleged Denial of Petitioner's FAPE**

1.      Since the State of California Holds Ultimate Responsibility for Public Education, it Must be Held Liable for Petitioner's Special Education Services After a Public Charter School Closure

As the Charter SELPA noted in its own Motion to Dismiss, the California Department of Education must, at the very least, be held responsible for Petitioner's

special education services after a public charter school closure. (Exhibit K.)  As the

California Supreme Court found:

> Local districts are the State's agents for local operation of the common school
> system (*Hall v. City of Taft*, (1956) 47 Cal.2d 177, 302 P.2d 574; *San
> Francisco Unified School Dist. v. Johnson*, (1971) 3 Cal.3d 938, 952; 92
> Cal.Rptr. 309; 479 P.2d 669), and the State's ultimate responsibility for public
> education cannot be delegated to any other entity (*Hall v. City of Taft*, *supra*;
> *Piper v. Big Pine School Dist.*, 193 Cal. 664 (1924).)
>
> (*Butt v. State of California,* 4 Cal.4th 668, 680-681 (1992).)

Pursuant to these principles, where the LEA is no longer responsible, the

IDEA provides that the state educational agency has the ultimate responsibility for

ensuring compliance with Part B of the IDEA, consistent with 34 C.F.R. § 300.149.

Title 20 of the United States Code, Section 1413(g) provides that when an LEA is

unable to provide services required by the IDEA, the state educational agency must

step in and provide services either directly or by contract. Moreover, 20 U.S.C. §

1412(a)(11)(A) states that "[t]he State educational agency is responsible for ensuring

that ... the requirements of this subchapter are met.").

In *Orange County Dept. Of Educ. v. California Dept. of Educ.*, 668 F. 3d

1052, 1063-1064, (9th Cir. 2011) the Court found that the California Department of

Education was ultimately responsible for provision of a FAPE to a student and could

be held responsible for providing a remedy.  In *Gadsby v. Grasmick*, 109 F.3d 940,

953 (4th Cir. 1997), the Court found that "the [State Education Agency] is ultimately

responsible for the provision of a free appropriate public education to all of its

students and may be held liable for the state's failure to assure compliance with

IDEA."  In *St. Tammany Parish Sch. Bd. v. Louisiana*,142 F.3d 776, 784, (5th Cir.

1998) it was found that the IDEA places primary responsibility on the state

educational agency to ensure that the requirements of the IDEA are carried out.  In

*R.V. v. Rivera, 220 F. Supp. 3d 588, 593*, (E.D. Pa. 2016) the Court found that the

state educational agency was responsible when the LEA, a charter school, closed:

1
2
3
4
5

Here, the LEA that was the direct service provider during the timeframe subject to Plaintiff's due process complaint is a failed charter school that has ceased to exist. In light of the emerging consensus in this district that the SEA assumes responsibility for a failed charter school's FAPE violations, a parent may properly subject the SEA to an IDEA due process hearing on the allegations made here.

6
7
8
9

Similarly, in *Student v. Pennsylvania Department of Education*, 116 LRP 3021 (2015), (attached as Exhibit "X"), it was held that where the charter school denied the student a FAPE and is unable to provide any remedy, the department of education must provide such a remedy.

10
11
12
13
14
15

Here, Flex was a public charter school and, as such, the California Department of Education holds the ultimate responsibility for providing a FAPE to students of this school.  When Flex closed, the CDE, at the very least, must be available to provide a remedy for any denials of FAPE to these students, including Petitioner.  OAH erred when it dismissed CDE, especially without permitting a factual record to be developed at hearing on the issue.

16
17
18

2.    K12, Inc. Should be Held Responsible Since it Acted as a Public Agency and Maintained Control of Decisions Regarding Petitioner's Education at Flex

19
20
21
22
23
24
25
26
27
28

K12 is responsible since the facts demonstrate that it maintained control of Flex and the decisions that it made regarding the education of Petitioner and Flex's other students.  Essentially, K12 and Flex were the same entity and should be treated as such.  As discussed in Petitioner's oppositions to K12's motions to dismiss, Flex's Board of Directors, which was responsive for the operation and governance of Flex, was headed by Mark Kushner, K12's Vice President of Business Development and School Partnerships.  (Exhibits D, I.)  Flex's principal, Caroline Wood, was also a K12 employee.  (*Id*.)   K12 also admitted in its financial documents that it managed and operated Flex.  (*Id*.)  In fact, the California Department of Education's school directory lists Flex's website as www.svflex.org.  (*Id*.)  Clicking on this link

PETITION FOR WRIT OF PROHIBITION OR,
IN THE ALTERNATIVE, WRIT OF MANDAMUS                                         14

redirects the user to K12's website.  (*Id*.)  The currently known evidence strongly indicates that Flex and K12 are essentially the same entity and that it was K12 and its employees who were making decisions regarding Petitioner's education.  At the very least, there was a dispute of fact as to K12's role in Petitioner's education, a dispute that the OAH recognized when it denied K12's first motion to dismiss, but which it ignored upon K12's motion for reconsideration.

Even if K12 were to not be treated as the same entity as Flex, it can also be held responsible since, even though it is a private entity, it is effectively acting as a public agency.  For example, in the context of the Fourteenth Amendment, courts have found that a private entity is treated as a public actor when it operates as a "willful participant in joint activity with the State or its agents" (*Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 94 (1982).) or when it has been delegated a public function by the State.  (*West v. Atkins*, 487 U.S. 42, 56 (1988); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627–628 (1991).)  Here, the public agencies chose to delegate a portion of their power to K12 to act as the manager and operator of a public charter school.  When K12 took on these powers of these public agencies it was, essentially, acting as a public agency on behalf of the state and should be held responsible as a public agency.

3.   SCCOE Should be Held Responsible Since it Granted the Charter to Flex and Responsibility Potentially Reverted to SCCOE when Flex Closed

SCCOE should also be held liable as a public agency charged with responsibility for Petitioner's education at Flex.  By the terms of SCCOE's charter which it granted to Flex, SCCOE asserted that it would supervise and oversee the operations of Flex and, in fact, that it would charge a fee for doing so.  (Exhibit S.) SCCOE also maintained the right to revoke the charter if Flex failed to meet the terms of the charter.  (*Id*.)  It is entirely possible that, at a hearing, the factual record would reveal that responsibility for Flex and its students reverted back to SCCOE

1    when Flex closed and the charter expired.  At the very least, Petitioner is entitled to a
2    due process hearing to determine whether SCCOE is a proper party to his claims.

3        4.   The Charter SELPA Should be Held Responsible as a Public Agency
4            Potentially Accountable for Provision of Petitioner's Special Education

5        The Charter SELPA, like SCCOE, is a public agency charged with providing
6    special education services.  State law expressly states that procedural safeguards
7    shall be maintained by all educational and noneducational public agencies providing
8    services to disabled students to allow for complaints regarding the provision of a
9    free appropriate public education.  (Ed. Code § 56500.1) Federal Regulations assign
10   responsibility for the provision of services and supports to eligible students under the
11   Individuals with Disabilities Education Act to "all political subdivisions of the State
12   that are involved in the education of children with disabilities."  (34 C.F.R. § 300.2)

13       Factual questions remain as to the extent of the Charter SELPA's
14   responsibility and direct involvement in providing services and supports to Petitioner
15   to ensure that he received a FAPE, and the decision-making process.  The Charter
16   SELPA is a public agency subject to the provisions of the IDEA, as this term is
17   defined in pertinent federal and state laws and regulations.  The Charter SELPA is
18   subject to the procedural safeguards provided by state and federal law, and is a
19   proper party to the current due process complaint.

20

21   **E.    Public Policy Requires that a Party be Available to Provide a**
22   **      Remedy when a Public School Closes**

23

24       On June 20, 2018, Flex's attorney, Lisa Corr, stated that Flex was in the
25   dissolution process and that she was uncertain whether she would be representing
26   Flex.  (Exhibit U.)   On June 20, 2018, Ms. Corr stated in an email that Flex was in
27   the dissolution process.  (Exhibit U.)

28

1    Thus, as the OAH has left it, even were Petitioner to prevail at hearing and

2    obtain a judgement stating that Petitioner was denied a FAPE while at Flex and

3    should be awarded a remedy, no party remains to provide any remedy.  Courts have

4    recognized that where there is a right, there should be a remedy.  (See, e.g.,

5    *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001).)  Education is a

6    Constitutional right.  (*Butt v. State of California*, *supra*, 4 Cal. 4th 668.)  It would fly

7    in the face of the intent of the IDEA to permit a situation where a student was denied

8    a FAPE at a public school, but no entity exists that can provide a remedy under the

9    IDEA simply because the school has closed.

10

11   **X.    CONCLUSION**

12    For the reasons set forth above, Petitioner respectfully requests that this Court

13   issue a Writ of Prohibition, or an in the alternative, a Writ of Mandamus, requiring

14   OAH to immediately reinstate CDE, SCCOE, K12, and Charter SELPA as parties to

15   Petitioner's due process complaint; to reinstate his hearing dates as to these parties;

16   and to permit an evidentiary hearing on the issue of whether these entities are proper

17   parties and responsible for remedy for a denial of FAPE.

18

19   Dated:      July 9, 2018          **RUDERMAN & KNOX, LLP**

20

21                                     /s/ Christian M. Knox
22                                     CHRISTIAN M. KNOX
23                                     BRIAN D. MCFARLIN
                                       Attorneys for Plaintiff

24

25

26

27

28